UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------x

JOSE JIMENEZ,

                    Plaintiff,            **MEMORANDUM & ORDER**
                                          20-CV-5534(EK)(PK)
          -against-

OCCIDENTAL FIRE & CASUALTY CO. OF
NORTH CAROLINA,

                    Defendant.

-----------------------------------x
ERIC KOMITEE, United States District Judge:

          A fire occurred at plaintiff Jose Jimenez's home on
July 25, 2020.  Jimenez was not home, and the record does not
reveal that anyone was injured.  Jimenez does allege, however,
that he suffered over $160,000 in damage to the contents of his
house.

          In an application of Murphy's Law, the fire occurred
approximately a week after the expiration date of the insurance
policy, issued by the defendant, under which Jimenez seeks
coverage.  But it occurred during a fifteen-day grace period
mandated by New York law for late payment.  Jimenez did not pay
the premium during that grace period — or, it appears, ever.
The question in this case is whether the coverage terminated at
the end of the grace period, or whether such termination was
retroactive to the end of the policy term.

I read the applicable statute and case law to permit the retroactive cancellation that the defendant — Occidental Fire and Casualty Company of North Carolina — seeks. Nevertheless I hold that the policy Occidental actually wrote did not provide for that outcome.  Accordingly, I deny Occidental's motion to dismiss Jimenez's main breach-of-contract claim.  However, I grant Occidental's motion to dismiss Jimenez's estoppel claim, as well as a second contract claim that is duplicative (and, in any event, is predicated on an invalid legal theory).

## I.  Background

The following facts are taken from Jimenez's Amended Complaint and other documents submitted in connection with the motion to dismiss — namely, the insurance policy that Occidental originally issued to Jimenez; the package of documents it sent inviting Jimenez to renew the policy; and Occidental's subsequent notice of cancellation.  Am. Compl., ECF No. 11; Insurance Policy, ECF No. 14-5; Renewal Package, ECF No. 14-3; Notice of Cancellation, ECF No. 14-4.[1]

---

[1] Although these documents were not attached to Jimenez's Amended Complaint, the Court may consider them because they are "integral to the complaint and relied upon in it" and, alternatively, because they were "contained in defendant's motion papers" and Jimenez "has knowledge or possession of the material and relied on it in framing the complaint."  *Env't Servs., Inc. v. Recycle Green Servs., Inc.*, 7 F. Supp. 3d 260, 270 (E.D.N.Y. 2014).  Indeed, Jimenez references each of these documents in his Amended Complaint, acknowledges that he knows their contents, and relies upon them for his factual allegations.  *See, e.g.*, Am. Compl. ¶ 5 (relying upon the

In 2019, Jimenez purchased a homeowner's insurance policy from Occidental.  That policy provided coverage through July 17, 2020.  *See* Am. Compl. ¶ 4 (stating that the successor policy ran "for the period July 17, 2020 to July 17, 2021"); *see also* Renewal Package 7; Notice of Cancellation 2.[2]  Pursuant to the policy, Occidental insured the contents of Jimenez's residence in Bellrose, New York against fire damage and other types of loss.  Insurance Policy 11.

On June 8, 2020 — approximately five weeks before the policy was set to expire — Occidental issued Jimenez a renewal notice for the following year and an invoice for the renewal premium.  Am. Compl. ¶ 4.  The renewal notice called for payment of the new premium by July 17, 2020.  Renewal Package 6. Jimenez's Amended Complaint acknowledges that he did not pay the new premium by that date.  Am. Compl. ¶ 8.

Occidental then mailed a Notice of Cancellation dated July 21, 2020.  Am. Compl. ¶ 6; Notice of Cancellation 2.  That

---

renewal notice); *id.* ¶¶ 6, 15 (relying upon the Notice of Cancellation, providing its date, and summarizing its provision about keeping the policy in force); *id.* ¶ 14 (relying on and quoting the cancellation provision in the policy).  Accordingly, conversion of this motion to one for summary judgment is unnecessary.  *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) (holding that "[w]here plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint[,] the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated" and affirming the district court's consideration of a stock purchase agreement, offering memorandum, and stock warrant that were "integral to [plaintiffs'] complaint").

[2] Page numbers in citations to record documents refer to ECF pagination rather than the documents' native page numbers.

notice specified a "Date of Cancellation" of four days prior:
July 17, 2020, the last day of coverage for which Jimenez had
paid.  The cancellation notice also provided for a 15-day grace
period, as required by New York's Insurance Law.  It stated: "If
payment is received and honored by a financial institution
before August 06, 2020, the policy will remain in force and a
notice rescinding this cancellation will be mailed to you."  *Id.*

As noted, the fire occurred on July 25, 2020 — four
days into the grace period.  Am. Compl. ¶ 5.  Jimenez has
indicated that he was out of town and not receiving mail during
this time.  *Id.*  ¶¶ 20, 23–24; Pl.'s Mem. of Law in Opp'n to
Def.'s Mot. to Dismiss ("Pl. Opp'n") 3, ECF No. 15.  He
apparently learned of the fire quickly, as he alleges that he
called Occidental within two days of it to lodge his claim for
coverage.  *See Id.* ¶ 24.  Still, Jimenez acknowledges that he
did not pay the renewal premium by the end of the grace period;
indeed, he concedes that he never paid the renewal premium.  *See
Id.* ¶ 8 ("[T]he premium payment was not made prior to August 6
or thereafter."); *id.* ¶ 16 ("Payment was not received [by
Occidental] before August 6 or thereafter.").  But he does
allege that "the policy of insurance did not provide for
retroactive cancellation."  *Id.*  He seeks $160,156 in

reimbursement from Occidental for his home's contents.  *Id.*
¶ 18.[3]

The question here, accordingly, is on what date
Jimenez's coverage lapsed.  Occidental argues that coverage
lapsed on July 17, when the prior policy period ended; Jimenez
claims coverage remained in effect until August 6 — the end-date
of the grace period.

## II.  Legal Standards

On a motion to dismiss under Federal Rule of Civil
Procedure 12(b)(6), "the court's task is to assess the legal
feasibility of the complaint."  *Lynch v. City of New York*, 952
F.3d 67, 75 (2d Cir. 2020).[4]  In doing so, the Court "must take
the facts alleged in the complaint as true, drawing all
reasonable inferences in [the plaintiff's] favor."  *In re NYSE
Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007).  To
survive a motion to dismiss, a complaint must contain sufficient
factual matter, accepted as true, to "state a claim to relief
that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S.
662, 678 (2009).  Courts "are not bound to accept as true a
legal conclusion couched as a factual allegation," and

---

[3] Another insurer provided coverage for damage to the home itself
through a forced-place policy, *see* Am. Compl. ¶ 10, and therefore that loss
is not at issue in this case.

[4] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

### III. Discussion

The first two "Causes of Action" listed in Jimenez's Amended Complaint assert that Occidental breached its contractual obligations under the policy because it remained in force on the day of loss.  The two claims assert separate theories: that Occidental sent the notice of cancellation too late, and that the terms of the policy did not provide for retroactive cancellation.  Occidental's motion to dismiss Jimenez's Second Cause of Action claim is denied because I find the theory it embodies — that the provisions of the policy do not contemplate retroactive cancellation — to be viable.  But Occidental's motion to dismiss Jimenez's First Cause of Action is granted because it is duplicative of his Second Cause of Action and because, in any event, it is predicated on a meritless legal theory.

Jimenez also claims that Occidental should be equitably estopped from denying coverage under the policy.  But for the reasons set forth below, his complaint does not set forth sufficient factual content to sustain that claim.  Occidental's motion to dismiss the estoppel claim is therefore granted.

A.   **The Motion to Dismiss Jimenez's Second Cause of Action, for Breach of Contract, Is Denied Because His Policy Did Not Permit Retroactive Cancellation**

As noted, Jimenez's "Second Cause of Action" asserts that Occidental impermissibly cancelled his policy retroactively.  Occidental responds that it was permitted to cancel Jimenez's policy for nonpayment with retroactive effect.  Specifically, Occidental contends that given Jimenez's failure to pay the renewal premium by the end of the grace period — August 6, 2020 — coverage lapsed on July 17.  Def.'s Mem. of Law in Supp. of Its Mot. to Dismiss ("Def. Mem.") 6-7, ECF No. 14.  Whether this is true depends on a reading of both the New York Insurance Law and the language of the policy itself — specifically, the provision governing cancellation for non-payment.  Because this is the only viable theory that Jimenez has pleaded, I address it first.

1.   New York Insurance Law Allows Retroactive Cancellation

The first issue is whether the New York Insurance Law permits retroactive cancellation in this context.  Under Section 3425 of that law, Occidental's mailing of a renewal notice had the effect of renewing the policy.[5]  The Appellate Division explained this (perhaps counterintuitive) effect in *Victor v.*

_____

[5] The parties do not dispute that Jimenez's policy was a "covered policy" to which the cancellation provisions of New York Insurance Law apply.  *See* N.Y. Ins. Law § 3425(a)(2)(A); *see also* Def. Mem. 6; Pl. Suppl. Letter 2, ECF No. 22.

*Turner*, 496 N.Y.S.2d 761, 765 (App. Div. 2d Dep't 1985).   In

*Victor*, the court interpreted the old Section 167-a of the

Insurance Law, which was the predecessor to Section 3425 and

contained functionally identical language.[6]   The court explained

that although "[i]t is undoubtedly correct that the plain

language of the [statute] appears to condition renewal upon

payment, . . . an examination of the definitions contained in

Insurance Law § 167-a indicates otherwise."   *Id.* at 765.   This

indication otherwise comes from the statute's definition of

"renew":

> "To renew" or "renewal" is defined as "the issuance
> and delivery by an insurer, at the end of the policy
> period, of a policy superseding a policy previously
> issued and delivered by the same insurer, or the
> issuance and delivery of a certificate or notice
> extending the term of a policy beyond its policy
> period or term.

*Id.* at 765-66 (quoting Insurance Law § 167-a(1)(b)).   As *Victor*

goes on to explain, "[t]his language clearly contemplates a

renewal (*i.e.*, superseding) policy which is in effect upon

issuance and delivery at the 'end of the policy

---

[6] *See id.* at 762 (noting that former Section 167-a is "now § 3425");
*cf., e.g.*, *Rosner v. Metro. Prop. & Liab. Ins. Co.*, 754 N.E.2d 760, 763 (N.Y.
2001) ("The statutory predecessor to sections 3425(a)(7) and 3425(a)(8) was
section 167-a of the Insurance Law.").   Notably, the statutory language of
former Section 167-a(4)(a) that *Victor* analyzed — the definitions of renewal
and timely payment, and the relevant renewal provision — appears verbatim in
Section 3425(d)(1).   *Compare Victor*, 496 N.Y.S.2d at 765-66 (setting forth,
under former Section 167-a, the definitions of renewal and timely payment and
that "the named insured shall be entitled to renew the policy upon timely
payment of the premium billed to the insured for the renewal"), *with* N.Y.
Ins. Law § 3425(a)(6), (10), (d)(1) (same).

8

period.'"  *Id.* at 766.  Accordingly, the court held that "in the absence of a notice of nonrenewal in compliance with § 167-a(4)(a), renewal is *automatic upon billing* for the renewal term, and a notice of cancellation is required to terminate coverage." *Id.* at 767 (emphasis added).  Jimenez's policy was thus "renewed" by operation of law when Occidental mailed the renewal notice on June 8, 2020.

Once renewed, the policy can be canceled only as permitted by statute.  Section 3425 provides that "upon the effective date if the policy is a renewal, no notice of cancellation shall be issued to become effective" unless one of several listed events transpires.  N.Y. Ins. Law § 3425(c).  One such event is nonpayment of premium.  *Id.* § 3425(c)(2)(A); *see also id.* § 3425(a)(10) (defining "nonpayment of premium").

Even in the event of non-payment, however, the law provides a grace period.  That period is triggered by the issuance of a notice of cancellation.  "Payment to the insurer, or to an agent or broker authorized to receive such payment, shall be timely, if made within fifteen days after the mailing to the insured of a notice of cancellation for nonpayment of premium."  *Id.* § 3425(a)(10); *see Victor*, 496 N.Y.S.2d at 766 (referring to the 15-day period as a "grace period").

Despite the auto-renewal upon billing and the statutory grace period, New York cases make clear that

retroactive cancellation is permitted under the statute.  For

example, the Third Department approved a termination date that

preceded the expiration of the grace period in *Gannon v. New*

*York Mutual Underwriters*, 435 N.Y.S.2d 163 (App. Div. 3d Dep't),

*aff'd,* 430 N.E.2d 1318 (N.Y. 1981).  In that case, the insurer

issued a notice of cancellation that, by its terms, was to

become effective "14 days and 12 hours" later — half a day less

than the 15 days' required grace period.  *Id.* at 164–65.

Applying former Section 167-a, the court rejected the insured's

argument that the cancellation could not occur prior to the

expiry of the  grace period.  *Id.*  Rather, the court held that

the statute "merely sets an outer limit for acceptable *payment*."

*Id.* (emphasis added).  In other words, payment would have been

timely, and the policy kept in force, had the insured made

payment within fifteen days.  But such payment not having been

made on time, the court held that the cancellation could indeed

take effect twelve hours before the end of the grace period.

*Id. Gannon* thus stands for the proposition that the moment of

termination can precede the expiry of the grace period — that

is, that retroactive cancellation is permissible under Section

3425.[7]

---

[7] Notably, the New York Court of Appeals affirmed the Appellate
Division's opinion "for reasons stated in [that] opinion." *Gannon*, 430
N.E.2d at 1318.  And even if it had not, the "decision of an intermediate
state court on a question of state law is binding on the federal courts in a

Cases interpreting a similar provision of the Insurance Law, Section 3216(d)(1)(C), which governs the cancellation of certain health-insurance policies, also hold retroactive cancellation to be permissible.  Section 3216 requires certain policies to state that (for quarterly billed policies, for instance) a "grace period of [at least thirty-one] days . . . will be granted for the payment of each premium falling due after the first premium, during which grace period the policy shall continue in force."  N.Y. Ins. Law § 3216(d)(1)(C).[8]  Despite the requirement that coverage remain in effect during these grace periods to pay premiums, the First Department has held that after the "grace period expires and premiums have not been paid," the "coverage terminates retroactively to the end of [the] last month for which the subscriber did pay."  *Makastchian v. Oxford Health Plans, Inc.*, 721 N.Y.S.2d 351, 352 (App. Div. 1st Dep't 2001).  Similarly,

---

diversity action unless there is persuasive evidence that the highest state court would reach a different conclusion."  *St. Clair v. E. Air Lines, Inc.*, 302 F.2d 477, 481 (2d Cir. 1962); *see also Michalski v. Home Depot, Inc.*, 225 F.3d 113, 116 (2d Cir. 2000) ("The holding of an intermediate appellate state court is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise.").

[8] Although worded differently, Sections 3216 and 3425 both prescribe a grace period for the payment of a renewal premium, and thus the New York courts' interpretation of Section 3216 is relevant here.  *Cf.* 31 Anne M. Payne & Joseph Wilson, *New York Practice Series — New York Insurance Law* § 2:77 (2021–2022 ed.), Westlaw (Dec. 2021 Update) (analyzing both sections under the heading of "When obligation to pay arises; notice of premium due — Effect of grace periods; time limit").

another state court has explained that the grace period provided

by Section 3216 "is provided to give a policy holder currently

in arrears the opportunity to make a belated payment."

*Zaitschek v. Empire Blue Cross & Blue Shield*, 632 N.Y.S.2d 434,

436 (Civ. Ct. 1995), *aff'd for reasons stated*, 662 N.Y.S.2d 171,

172 (App. Term 2d Dep't 1997).  Where "[n]o payment was ever

made," however, the insurer was not "obligated to respond to any

claim filed within that grace period."  *Id.*[9]

      This position is consistent with various treatises.

For example, *Couch on Insurance* explains:

> According to the general rule, when death or loss
> occurs during the extension or grace period, the death
> or loss is no bar to recovery even when the premiums
> have not been paid, *provided* that they are paid prior
> to the expiration of the extension or grace period, at
> least where this is the intent of the parties.

---

[9] A number of older cases reached the same or similar conclusions.  *See Hartford Acc. & Indem. Co. v. Krumbein*, 397 N.Y.S.2d 675, 676 (Sup. Ct. 1977) (holding that former Section 167-a(1)(d) "does not require a notice of cancellation be given 15 days or any number of days before becoming effective"); *Struhl v. Travelers Ins. Co.*, 7 N.Y.S.2d 881, 884 (App. Div. 1st Dep't 1938) ("[I]f payment is not made within the time as extended, the default relates back to the original due date."), *aff'd*, 22 N.E.2d 162 (N.Y. 1939); *Hand v. Equitable Life Assur. Soc. of the U.S.*, 296 N.Y.S. 543, 545 (App. Div. 1st Dep't 1937) ("It is settled that a default occurs when a premium is not paid on the due date and that the default is not postponed for the period of grace.  The latter merely constitutes a waiver of the default."); *Talsky v. N.Y. Life Ins. Co.*, 280 N.Y.S. 69, 72 (App. Div. 1st Dep't 1935) ("The period of grace was allowed to prevent a forfeiture of the policy.  It did not change the date on which the premium was payable.  Consequently, there was default when the premium became due and was not paid . . . ."), *aff'd*, 1 N.E.2d 988 (N.Y. 1936); *Marek v. Mut. Life Ins. Co. of N.Y.*, 279 N.Y.S. 532, 533 (App. Div. 1935) ("[I]f payment was not made within the time as extended [by the grace period], the defaults related to the original due date.").

5 *Couch on Insurance* § 76:58, Westlaw (3d ed. June 2022 Update) (emphasis added).  Treatises specific to New York law state the same proposition; in their view, "[c]overage automatically stops retroactively to the due date of the premium if payment thereof is not received by the end of the grace period, as the grace period extends the time in which the insured may make a required payment but does not abrogate the need for such payment."  31 Anne M. Payne & Joseph Wilson, *New York Practice Series — New York Insurance Law* § 2:77 (2021–2022 ed.), Westlaw (Dec. 2021 Update); *accord* 69 *New York Jurisprudence* § 1110 (2d ed.), Westlaw (Nov. 2022 Update) (same).

Further support from this position came from the old New York State Department of Insurance, which opined "that retroactive termination of coverage back to the last day for which premium was paid is permitted when premium is not received during the grace period."  *Makastchian*, 721 N.Y.S.2d at 352–53 (citing the Department's pronouncement).  New York law provides that such an agency determination is to be "upheld in deference to [the Superintendent of Insurance's] special competence and expertise with respect to the insurance industry, unless it runs counter to the clear wording of a statutory provision or is "irrational or unreasonable."  *Med. Soc'y of State v. Serio*, 800 N.E.2d 728 (N.Y. 2003).  *Makastchian* explicitly upheld this

pronouncement in its interpretation of the statute.  *See* 721 N.Y.S.2d at 352–53.

There is language in *Victor* that can be read to suggest the opposite conclusion.  There, the Appellate Division concluded "that the procedure envisioned by the Legislature" was that the insurer could mail a notice of cancellation as early as the renewal date – here, July 17 – if the insured had not paid the new premium by then.  496 N.Y.S.2d at 766.  The effect of sending the notice of cancellation, the court continued, would be "the cancellation becoming *effective after* the expiration of the 15-day grace period" – here, on August 6 – if the insured had not paid the premium by then.  *Id.* (emphasis added).  Jimenez relies heavily on this language in his briefing.

But this language is not necessarily fatal to Occidental's position.  For starters, it is dicta; the insurance company in *Victor* had never mailed a notice of cancellation at all.  *See id.* at 491 (framing "the question on appeal" as "whether, in the absence of nonrenewal, a notice of cancellation for nonpayment of premium is required to terminate coverage for the renewal term of a policy protected by" New York's Insurance Law).  In addition, it is possible that the cancellation could *become* effective on one day – say August 6 – but be effective *as of* another — say July 17.  This position does not find especially strong support in *Victor* itself, but does in the

cases and treatises cited above.  This makes sense; otherwise, every policyholder would be insured for free during the grace period – an outcome that would be surprising, to say the least. The *Zaitschek* court expressly rejected this outcome: "A grace period is not intended as a free bonus month of insurance coverage added to every contract."  632 N.Y.S.2d at 164; *see also id.* at 165 ("No [belated] payment was ever made, and this court will not hold that an insurance company must maintain its coverage regardless of whether or not premiums are paid.").

For these reasons, the relevant statute permits retroactive cancellation.

2.   Jimenez's Insurance Policy Did Not Clearly Provide for
     <u>Retroactive Cancellation</u>

Still, the New York insurance statute is only an overlay to the policy.  Jimenez alleges, in paragraph 16 of his Amended Complaint, that Occidental's policy "did not provide for retroactive cancellation," and thus he was covered until the end of the grace period – August 6, 2020.  Am. Compl. ¶ 16.  Put differently, according to Jimenez, the "policy of insurance was in full force and effect" when the fire occurred on July 25, having been renewed by law (as described above) and not canceled retroactively.  *Id.* ¶ 17.  On this argument, he is correct.

To effectuate retroactive cancellation, the cancellation provisions of the policy have to provide for it.

"[T]he plain language of [an insurance] policy is determinative, and a court cannot rewrite the agreement by disregarding that language." *ABM Mgmt. Corp. v. Harleysville Worcester Ins. Co.*, 977 N.Y.S.2d 330, 332 (App. Div. 2d Dep't 2013).  The insurer cannot deploy a statute to rewrite (in its own favor) the contract it wrote its insured.  As the New York Court of Appeals has explained (albeit in a different context), statutory provisions "cannot be implied as part of the agreement so as to make a different contract from that which the parties intended nor override the agreement which the parties, in fact, made." *Bailey v. Fish & Neave*, 868 N.E.2d 956, 960 (N.Y. 2007) (interpreting the New York Partnership Law).  Illustrating this point in the health-insurance context, one court granted summary judgment because it found the defendant insurers' practice of terminating policies without 30 days' notice to be "in violation of the plain terms of the policy." *Makastchian v. Oxford Health Plans, Inc.*, 704 N.Y.S.2d 44, 45 (App. Div. 1st Dep't 2000).

> *Zaitschek* is instructive here.  That case began with an assessment of the policy language, which was critically different from the policy language here in that it expressly provided for retroactive cancellation.  632 N.Y.S.2d at 435.  It stated: "If we don't receive your payment within a 30 day grace period after the due date [of the renewal premium], your coverage will end automatically, and without notice, *as of the*

*due date*." *Id.* (emphasis added); *see also id.* at 436 (holding that the defendant insurer was permitted to cancel the contract retroactively "in accordance with *both contract and statute*") (emphasis added); *id.* at 437 (characterizing the contract as "unambiguously stat[ing] that . . . termination would be retroactively effective").

Here, in contrast, Occidental's policy did not specify any effective, or "as of," date of cancellation.  It stated simply: "When you have not paid the premium, we may cancel the entire policy at any time by mailing to you at least 15 days' notice of cancellation."  Policy Documents 30.  This language is ambiguous – at best – on whether cancellation may be retroactive.  And it is axiomatic that ambiguities in the policy are to be interpreted against the insurer in New York.  *See, e.g.*, *Victor*, 496 N.Y.S.2d at 767 (notice provisions "must be literally complied with and any ambiguities in language are construed against the insurer"; citing cases).

Ultimately, this appears to be a case of imperfect drafting: the policy could easily have said that upon nonpayment, the insurer "can cancel at any time by mailing a notice of cancellation, and such cancellation will be retroactive to" or "effective as of" an earlier date — either the date the policy expired, or the date the notice of cancellation was mailed.  But that is not the policy that

Occidental wrote, and therefore retroactive cancellation is unavailable.  The motion to dismiss Jimenez's breach-of-contract claim on this ground is denied.

**B.   The Motion to Dismiss Jimenez's First Cause of Action, Also for Breach of Contract, is Granted**

Jimenez's Amended Complaint also contains what he styles a "First Cause of Action."  Like his Second Cause of Action, the First Cause of Action asserts a breach of contract.  This latter cause of action is dismissed both because it is duplicative of the former, and because it is legally flawed.

1.   Jimenez's First Cause of Action Is Duplicative of His Second

Jimenez's First and Second causes of action are duplicative.  They are predicated on the same provisions in the same insurance policy; they both allege that Occidental was contractually obligated to cover the same loss but did not; and they seek recovery of the same $160,156 for the contents of Jimenez's house.  Am. Compl. ¶¶ 4-12.  The only difference between the causes of action is that they assert different theories to rebut an anticipated *defense*: namely, that coverage under Jimenez's policy had lapsed for nonpayment of premiums. The First Cause of Action asserts that the nonpayment defense should fail because Jimenez did not receive Occidental's notice of cancellation until "on or after the loss date."  Am. Compl. ¶ 7.  The Second Cause of Action asserts, as noted above, that

the defense should fail because "the policy of insurance did not provide for retroactive cancellation."  *Id.* ¶ 16.

District courts routinely dismiss contract claims when they are duplicative of other causes of action in a complaint. In *Safka Holdings LLC v. iPlay, Inc.*, for example, Judge Sullivan dismissed one of two contract claims *sua sponte* after noting that the two claims asserted identical factual predicates — "Defendant's wrongful repudiation, withdrawal from and termination of the License Agreement" — and sought "identical relief."  42 F. Supp. 3d 488, 492 (S.D.N.Y. 2013); *see also Abcon Assocs., Inc. v. Haas & Najarian*, No. 12-CV-0928, 2013 WL 12370529 (E.D.N.Y. July 16, 2013) (holding, on motion to dismiss, "that Plaintiff's complaint alleges one breach of contract claim" despite the plaintiff having styled it as three claims).[10]

---

[10] The conclusion that Jimenez's contract claims are duplicative is also consistent with the district court's denial of leave to amend the complaint in *JTRE Manhattan Ave. LLC v. Capital One, N.A.*, No. 21-CV-5714, 2022 WL 2901402 (S.D.N.Y. July 22, 2022).  There, Judge Caproni denied such leave because the newly proposed claims were merely "part and parcel" of the plaintiff's existing breach of contract claim.  *Id.* at *4; *see also Backus Plywood Corp. v. Commercial Decal, Inc.,* 317 F.2d 339, 341 (2d Cir. 1963) (concluding that multiple alleged breaches of the same contract did not constitute separate claims because they arose out of "a single transaction composed of a closely related series of occurrences"); *Acumen Re Mgmt. Corp. v. Gen. Sec. Nat. Ins. Co.,* 769 F.3d 135, 143 (2d Cir. 2014) (holding, for purposes of Rule 54(b), that multiple theories of breach of the same contract did not constitute discrete or segregable claims; instead, they were part of a "closely interwoven whole").

2.   <u>In Any Event, Jimenez's Alternative Theory Fails</u>

Even as a theory of liability (rather than a free-standing claim), the argument underpinning Jimenez's First Cause of Action is untenable.  Accordingly, it is dismissed on this basis as well.

Jimenez argues that his "policy remained in full force and effect on the date of loss" because "[t]he notice of cancellation was not received until on or after the loss date." Am. Compl. ¶¶ 7–8.  But as Occidental argues, the date on which he received the notice is irrelevant.

Once again, this question is governed by both Section 3425 and the terms of the policy.  In this case, both peg timeliness to the mailing — not receipt — of a notice of cancellation.  *See supra* section III.A.1 (quoting Section 3425's provision that payment "shall be timely, if made within fifteen days after *the mailing* . . . of a notice of cancellation"); *see also supra* section III.A.2 (policy states that "we may cancel the entire policy at any time by *mailing* to you at least 15 days' notice of cancellation") (all emphases added).

Jimenez cites two cases in support of his theory, Pl. Opp'n 5–7, but neither is relevant here.  He first cites the Appellate Division's opinion in *Savino v. Merchants Mutual Insurance Co.*, 392 N.Y.S.2d 80 (App. Div. 2d Dep't 1977), *aff'd*, 378 N.E.2d 1038 (N.Y. 1978).  But as the Court of Appeals

explained in affirmance, the insured in that case sent (through an agent) a notice of cancellation to the insurer, not (as here) the other way around.  378 N.E.2d at 1039.  The Court of Appeals applied the rule that such a "request for cancellation of a policy is not effective, irrespective of the intention of the insured, until actual receipt by the insurance company or its agent."  *Id.*  That rule, which stands in contrast to the rule applicable to the insurer, is not at issue in this case.

Although the rule applicable to the insurer is set by statute, the rule applicable to an insured seeking to cancel the contract stems from case law.  In *Crown Point Iron Co. v. Aetna Insurance Co.*, the New York Court of Appeals held that an insured's request to cancel its insurance policy "could not be complete until the request reached the [insurer] or [its] agent."  28 N.E. 653, 656 (N.Y. 1891).[11]  The court reasoned that under New York law, a request to cancel insurance is "binding" on the insurer.  *Id.*  Such a rule is for the benefit of the insured, because otherwise, "[a]n insolvent insurer, by refusing to cancel, would prevent the insured from procuring other insurance," and an insurer could also unilaterally prevent

_____

[11] Despite the age of *Crown Point Iron*, its rule has been repeatedly reaffirmed and applied in the last century in cases where the insured seeks to cancel the policy.  *See Russ Togs, Inc. v. Fid.-Phenix Ins. Co.*, 319 N.Y.S.2d 1, 2 (App. Div. 1st Dep't 1971), *aff'd*, 295 N.E.2d 386 (N.Y. 1973); *Louisiana Pub. Utilities Co. v. Atlas Assur. Co.*, 264 N.Y.S. 603, 606 (App. Div. 1st Dep't), *aff'd*, 189 N.E. 714 (N.Y. 1933); *Gately-Haire Co. v. Niagara Fire Ins. Co. of City of New York*, 116 N.E. 1015, 1016 (N.Y. 1917).

"[t]he right of action for the unearned premium" from becoming available.  *Id.* at 655.  And in seeking to bind the insurer under that rule, it only made sense that if the request "never reached the [insurer], [it] would not have been bound, or, if it reached [the insurer] after a long delay, [the insurer] would have been bound only from the date of receipt."  *Id.* at 656. This rationale does not apply, and a different timeliness test prevails, when the insurer is the one seeking to cancel the policy.

Jimenez also cites *Boyce v. National Commercial Bank & Trust Co. of Albany*, 247 N.Y.S.2d 521, 524 (Sup. Ct.), *aff'd,* 254 N.Y.S.2d 127 (App. Div. 3d Dep't 1964).  In that case, the policy's cancellation provision required the insurer's "giving" 10 days' notice of cancellation to the insured before the policy could be cancelled.  *Id.* at 523 (quoting policy language).  The insured denied receiving any such notice.  *Id.* at 526.  The trial court held that the insurer had not established either mailing or receipt of the notice and therefore was required to cover the loss.  *Id.* at 527.[12]  In contrast, in this case, Jimenez acknowledges that he received a notice of cancellation, *see* Am. Compl. ¶ 7, so *Boyce* is of no consequence.

---

[12] Whether the notice would have been timely was not in dispute: it was purportedly mailed in February prior to the July house fire at issue.  *See id.* at 522–23.

To the extent Jimenez relies on *Boyce*'s suggestion that the "giving" of notice requires both actual mailing and actual receipt, *see* Pl. Opp'n 6–7, this argument fails for two reasons. First, the prior rule, expressed by the Appellate Division, that "given" means "delivered," has been overruled by the Court of Appeals. *See Ball v. Allstate Ins. Co.*, 611 N.E.2d 750, 751 (N.Y. 1993) (holding that an insurance statute that "imposes the burden on insureds to 'furnish' proofs of loss" requires only timely mailing of such proofs, and overruling conflicting precedent). Second, as noted, both the statute and the policy language here explicitly concern only the mailing of the notice, not its receipt.

## C.   Jimenez Has Not Adequately Pleaded an Equitable Estoppel Claim

Finally, in his Third Cause of Action, Jimenez alleges that Occidental should be equitably estopped from denying coverage. He argues that when he reported the loss to Occidental, its claims representative failed to inform him that he had failed to pay his renewal premium. Am. Compl. ¶¶ 19–25. For this reason, he claims, Occidental should be estopped from terminating coverage for nonpayment. (Although the Amended Complaint does not make clear what kind of estoppel Jimenez is alleging, in his opposition, he clarifies that he is pursuing a claim of equitable estoppel. Pl. Opp'n 14.)

But Jimenez has not adequately pleaded an equitable estoppel claim.  Under New York law, Jimenez must establish certain elements regarding the insurer's conduct and his own state of mind.  As to Occidental:

> A party seeking the protection of equitable estoppel must demonstrate the following as to the party against whom the doctrine is invoked: (1) Conduct which amounts to a false representation or concealment of material facts, or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) intention, or at least expectation, that such conduct shall be acted upon by the other party; (3) knowledge, actual or constructive, of the real facts.

*Michaels v. Travelers Indem. Co.*, 683 N.Y.S.2d 640, 641–42 (App. Div. 3d Dep't 1999).  And as to himself:

> As related to the party claiming the estoppel, [the elements] are: (1) Lack of knowledge and of the means of knowledge of the truth as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3) action based thereon of such a character as to change his position prejudicially.

*Id.*  Jimenez has not pleaded sufficient facts to support this claim.  Most prominently, he has not pleaded any "false representation or concealment of material facts" on Occidental's part.  *Id.* at 641.  Rather, he alleges only that when he called Occidental to report the loss, Occidental's claim representative "did not advise [him] that his policy had been cancelled for nonpayment."  Am. Compl. ¶ 22.  But that alleged omission does not create a claim for relief; Occidental cannot plausibly be

said to have "concealed" the cancellation that they undisputedly announced in the cancellation notice they mailed. *Cf. Michaels*, 683 N.Y.S.2d at 642 (equitable estoppel claim failed where the insurer "unequivocally advised [the insured] that cancellation would occur unless full payment [of $804] was received by" a certain date but insured paid only $400 by that date). Nor does Jimenez allege that he lacked "the means of knowledge of the truth as to the facts in question," *i.e.*, whether his policy was in good standing; he suggests no reason he could not simply have asked. Moreover, Jimenez has not shown that he relied upon the alleged omission — for example, by foregoing a payment he would otherwise have made. Instead, Jimenez alleges that he mistakenly believed he actually *had* made the renewal payment — specifically, that "his premium payment was automatically debited from his checking account." Am. Compl. ¶ 24.

Thus, Jimenez's estoppel claim must be dismissed for failure to state a claim.

## IV.   Conclusion

For the reasons set forth above, Occidental's motion to dismiss is granted as to Jimenez's First and Third Causes of Action but is denied as to his Second Cause of Action. The case

is respectfully referred to Magistrate Judge Kuo for pretrial

supervision.

        SO ORDERED.


                        /s/ Eric Komitee
                  ERIC KOMITEE
                  United States District Judge


Dated:     February 8, 2023
           Brooklyn, New York